By the Court

Lyon, J.,
delivering the opinion.
Judge Bigham, in his very able and comprehensive decision, pronounced on the hearing of this application, puts the right of *167 the applicant to a discharge from the custody of the enrolling officer on two grounds: 1st. That at the time of the election and qualification of the applicant, as Justice of the Peace for the two hundred and thirty-eighth district, Georgia Militia, he was not a soldier in the army of the Confederate States, subject to the rules and articles of war. 2d. That conceding that he had been regularly mustered into the service as a soldier, his subsequent election and qualification as a Justice of the Peace entitled him to a discharge from the service. The decision rested mainly on the latter ground..
I shall consider both the grounds, and will endeavor to show that the Court below was right on each, though the decision of the Court is put on the last ground. In making up the judgment of the Court, either from the neglect of counsel or from our own oversight, a very important clause of the Conscript Act bearing on the first ground, was entirely overlooked. Had .our attention been called to that clause, our judgment might have rested solely on the first, for we were disposed to postpone a decision of the question made by the last ground, if we could, as we were not able to agree upon it. What I shall, therefore, say upon the first point must be understood as my own opinion, and not that of the Court. Strong, the applicant, being thirty-seven years old, was made subject to conscription by the amended Conscript Act of 27th September, 1862, but was exempted by the Exemption Act of 11th October, 1862, on the ground that he was the owner of a plantation on which he had twenty negroes over sixteen years old, and on which there was no white male adult not liable to military duty. This part of said Act being repealed by an “Act of Congress, approved May 1st, 1863, he again became subject, and on the 29th September, 1863, applied to the president for a special exemption by reason of his being overseer of ten negroes over sixteen years old. Instead of granting the exemption he was enrolled under the requirements of the War Departments in such cases; that is, on that day his name was entered on the enrollment books at Camp Randolph, as a conscript, and then he was detailed as overseer for himself until further orders. About the 18th December, 1863, Strong’s detail having been revoked, he was ordered to *168 report to the camp of instruction. This order, as it appears, he promptly obeyed. But in the interval between the detail and the orders to him to report to Camp Randolph, lie was elected, commissioned and qualified as a Justice of the Peace. It is admitted that if this election and qualification had preceded the enrollment, that the applicant could not have been put in the service, that he would have been exempt. But it is claimed, upon the part of the enrolling officer, that the enrollment placed Strong in the service, and that he was, as such, a soldier of the army, after the enrollment and during his absence under the detail, allowed him, after he had been mustered into the service, and assigned to duty in the field, and that this was the effect of enrollment. I do not think so. On the contrary, I think that this effect is negatived by the terms of the Act requiring the enrollment. That Act declares, section 2, that “such companies, squadrons, battalions, or regiments, organized or in process of organization, by authority of the Secretary of War, as may be, within thirty days from the passage of this Act, so far completed as to have the whole number of men requisite for organization actually enrolled, not embracing in said organization any person now in service, shall be mustered into the service of the Confederate States.” This section implies very plainly that enrollment is one thing, and putting in the service another. But, further, the third section authorizes the president, for the enrollment of persons comprehended within the provisions of that Act, who were not already in the service, to employ Confederate officers, charged with the duty of making such enrollment in accordance with rules and regulations to be prescribed by him. The fourth section declares that persons enrolled shall be assigned by the Secretary of War, etc.; and one of the provisoes of the sixth section declares, l‘fhat the persons comprehended within the provisions of this Act shall not be subject to the rules and articles of war until mustered into the actual service of the Confederate States ; except that said persons, when enrolled and liable to duty, if they shall wilfully refuse to obey said call, (one provided for in a previous clause in the section,) each of them shall be held to be a deserter, and punished as such under said articles.” This is the clause of the Act to which *169 our attention was not called or directed while we had the question under advisement.
Now, although this proviso is in a section that makes provision for the excess of conscripts remaining in any of the States, after the various regiments, etc., have been filled up to their maximum number, declaring that such excess shall be held as a reserve to remain at home, and not to receive pay during that time, and to be called out by the president, etc. Yet, this particular proviso applies, by express terms, to all the “persons comprehended in this Act,” and in. it we have the legislative interpretation of the term enrollment, and its effect upon the person enrolled. He is not in the service, not a soldier subject to the rules and articles of war, not entitled to pay until assigned and mustered into service. The enrollment is but one step; it subjects the person to the call, and if he fails to obey he shall be held a deserter, and punished as one; but by this Act itself, if the person enrolled refuses to obey the call, he cannot be treated as a deserter, if he is not then, (the time of the call upon him,) although enrolled, “liable” to the duty imposed by the Act. If he is then an exempt, and claims it, he is entitled to it.
In this case, Strong, the enrolled man, obeyed the call, as he felt it his duty to do under the detail and his obligation, but before assigned and mustered into service, he claimed his exemption. The only claim the government had upon him, by the Act or detail, was his appearance. This he made, and if he was not then liable, if he was at that time in a position which, by an Act of Congress, or otherwise, exempted him from the service, as he most clearly was, the enrolling officer had not the power, or right, under this Act, to detain him, and he should have been discharged. But this, as I have before stated, is but my own opinion.
2. The ground of exemption here claimed is that the applicant is a Justice of the Peace for the State of Georgia, duly elected, commissioned and qualified. The enrolling officer insists that the Act of enrollment and revoking the detail puts the applicant into the service, and that his subsequent election and qualification, although if he had been in that position be *170 fore enrollment he would have been exempted, could not then take him out of the service; that the duty of a soldier was upon him ; that the rights of the Confederate government had attached to him and his services, and these could not be thrown off or divested by any act of his or others, except with its consent, until the duty imposed upon him, and the claims of the government 'were discharged, etc. This brings up a very important question — conceding that I am wrong and that counsel is right as to the first point — and that is, whether the right of the State and the people thereof, to its complete organization, and its several departments, executive, legislative and judicial, and its easy, uninterrupted and continuous system of preserving, perpetuating and supplying these several departments with the officers necessary to their administration, intact, is paramount or subordinate to the exercise by Congress of a constitutional grant of power, or of a right acquired thereby? We hold that the right of Congress to exercise its various grants of power in the imposition of a duty on a citizen of a State, and its exaction of his services, although already attached, whenever it conflicts ■with the right of the State or the people to use or employ the person or services of the citizen, to administer, execute or fill any office in either of the departments of State according to its Constitution and laws must yield to the right of the State, and of the citizen as to a paramount one. The several departments and the mode of selecting and supplying the material of which they are composed, and the agents who administer them according to the Constitution and laws of the State, give to it, the State, its republican form of government. The right of the people to elect officers necessary to fill the various offices of the several departments of the government — the right of the citizens to hold, use and occupy these offices when elected or selected for that purpose — and the right of the State to the free and untrammeled exercise by her citizens of these powers, to preserve and continue her organization, and the administration of her laws is inherent in one and the other as a republican government and the citizens thereof. To abridge this right in the citizen or the State is, to that extent, destructive to the republican form of government. The Constitution of the Confederate *171 States, in the 4th paragraph of the 3d section and 4th Article, declares that, “ the Confederate States shall guaranty to every State that now is or hereafter may become a member of this Confederacy, a republican form of government.” All powers, therefore, granted to Congress, must be held and exercised by it in subordination to this obligation, and an act or exercise of a power detrimental to these rights, or having a tendency thereto, must be regarded as a mere nullity, and so held, else Congress would or might thereby avoid a constitutional obligation, and subvert the State government itself. Thus the people of the two hundred and thirty-eighth district Georgia Militia, in the county of Oglethorpe, had the constitutional right to select by election any citizen of that district, whether in the service or out of it, and who would consent to hold it, to fill the office of Justice of the Peace of that district, then vacant. In the exercise of that right they selected the applicant, Strong, who, in the exercise of his right so to do, consents to accept, and the State clothes him with authority by commission to hold and exercise the duties of that office, and to be entitled to all its privileges and immunities. If the Confederate States, by reason of its claim to his services as a soldier, has the power to hold him in custody, so that he cannot discharge the duties of the office, the right of the people to make this selection, and of the citizen to hold the office, and of the State to have the office filled, and its duties performed are all defeated. If the power can be exercised in this case, it can be as to every office in any one of the departments of the government of the State. This is not at all impossible, for since Congress has employed the Constitutional grant of power to raise armies, by conscribing all the arms-bearing population of the several States, all, or nearly all of the civil offices in the State have become vacant by the expiration of the terms for which they were by law held, and it was necessary for all of them to be filled by election, or the constitutional mode of appointment. It was legitimate for each of the offices to be filled by an election or selection of those who were in the army, nor was it beyond the range of probability that this should have happened. Had it done so, and Congress had insisted upon the same power and right as in this case, the *172 government would have ceased to exist for the want of persons to administer it. I do not mean to say that Congress had exhibited any desire to make any encroachment of this kind, for it has provided by law as to nearly all the offices — the office of Justice of the Peace, for some reason, was ou>itted — that when a soldier or person in the army is selected to fill them that he shall be discharged from the service. The right is too important an one to be left to the mere grace or statutory provision of Congress. It does not depend upon the will of Congress, but is guarded by a constitutional guaranty, that must prevail over all its power.
Let the judgment be affirmed.
Mr. Justice Jenkins dissented from the judgment of the majority of the Court in this case, but furnished no dissenting opinion.